**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LNS Enterprises LLC, et al., | No. CV-19-05221-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Continental Motors Incorporated, et al., | |
| Defendants. | |

Pending before the Court are four motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Docs. 10, 15, 19, 51.) The movants are Defendants Continental Motors Inc., Leading Edge Aviation Inc., Kelly Aerospace Thermal Systems LLC, and Textron Aviation Inc.[1] Plaintiffs Peter and Lynn Spanganberg, LNS Enterprises LLC, and Sonoma Oral and Facial Surgery PLLC responded, (Docs. 29, 34, 44, 55), and Defendants replied, (Docs. 38, 42, 54, 57). Oral argument was held on May 20, 2020. (Doc. 80.) Having considered oral argument, the pleadings, and relevant case law, the Court will grant the motions and dismiss these Defendants.

## I.     BACKGROUND

On July 31, 2017, a Columbia 400 N8725 aircraft carrying Peter Spanganberg and two others was forced to make an emergency landing in a field near Chandler, Arizona

---

[1] The other, non-moving defendants are Aviation Industry Corporation of China, Columbia Aircraft Manufacture Corporation, Cessna Aircraft Company, Chandler Aviation Services Inc., Skylancer Aviation Services Inc., Lone Mountain Aviation Inc., and Falcon Executive Aviation Inc. For purposes here, the movants are referred to as "Defendants."

after the engine failed midflight. (Compl.[2] ¶¶ 7, 65, 88-90.) The National Transportation Safety Board's ("NTSB") post-incident inspection report indicates that the aircraft's underside was covered in oil and the engine had a hole in it, consistent with decreased oil and manifold pressure that would cause in-flight engine failure. (*Id.* ¶ 91.) Because Spanganberg had to make an emergency landing, the aircraft suffered significant structural damage and total engine loss. (*Id.* ¶ 92.)

About a year before the emergency landing, Spanganberg bought the 2006 aircraft, equipped with a Continental Motors TSIO-550-C engine, from an unidentified individual to fly within Arizona for work. (*Id.* ¶¶ 65, 71.) The aircraft was serviced in Oregon by Leading Edge Aviation Inc. ("LEA"), an Oregon corporation with its principal place of business in Oregon, at some point before the incident,[3] (*id.* ¶¶ 55-56, 83; Doc. 15-1 at 1), and allegedly manufactured, designed, and distributed by Cessna Aircraft Company ("Cessna") and its parent company, Textron Aviation Inc. ("Textron"),[4] both Kansas corporations with their principal places of business in Kansas, (Compl. ¶¶ 35-38). The aircraft's engine was designed, manufactured, and distributed by Continental Motors Inc. ("CMI"), a Delaware corporation with its principal place of business in Alabama, (*id.* ¶¶ 9-12, 71-74), while Kelly Aerospace Thermal Systems LLC ("KATS"), a Delaware corporation with its principal place of business in Ohio, designed, manufactured, and distributed the aircraft's deicer system, (*id.* ¶¶ 26-28, 68-69). Unlike Plaintiffs Peter and Lynn Spanganberg, LNS Enterprises LLC, and Sonoma Oral and Facial Surgery PLLC, which are each located in Arizona, none of these entities are incorporated, operated, or headquartered here. (*Id.* ¶¶ 6-9, 26, 35-36, 55.)

Two years following the incident, Plaintiffs sued these Defendants and others in

---

[2] Plaintiffs' complaint is attached to the Notice of Removal. (*See* Doc. 1-3 at 12-32.)
[3] Other defendant entities, ones uninvolved in these motions, also serviced the aircraft sometime before the incident. (*See id.* ¶¶ 78-82, 84-86.)
[4] The complaint alleges that Textron "is a parent company or holding company for Cessna Aircraft Company and/or owns and or does business as Cessna." (Compl. ¶ 36.) Textron relatedly argues that "Cessna is not properly named as a separate defendant" because "[it] was merged into [Textron] and ceased to exist as a separate corporate entity." (Doc. 19 at 2 n.1.) Because Plaintiffs do not contest this assertion, the Court refers to both entities as Textron and treats its motion to dismiss as one concerning both parties.

Maricopa County Superior Court before it was removed to this Court on September 19, 2019. (Doc. 1.) Plaintiffs' complaint alleges claims of negligence, negligence per se, strict products liability, and breach of warranty against the various fifteen original Defendants. (Compl. ¶¶ 96-156.) Four of the remaining Defendants now move to dismiss the complaint, which alleges that "[t]his Court has jurisdiction . . . over [them]," (*id.* ¶ 1), for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II. LEGAL STANDARD

Before trial, a defendant may move to dismiss the complaint for lack of personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction, *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995), and "need only make a prima facie showing of jurisdictional facts" "in the absence of an evidentiary hearing," *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted). In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, the complaint's uncontroverted allegations are accepted as true and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see*, *e.g.*, *A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). Thus, analyzing personal jurisdiction under Arizona law and federal due process are identical. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

To comport with due process, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks and citations omitted). This requirement ensures "that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The standard to establish general jurisdiction is an "exacting" one, as the defendant's contacts must be so pervasive that they "approximate physical presence" in the forum state. *Schwarzenegger*, 374 F.3d at 801. "[O]nly in an 'exceptional case' will general jurisdiction be available anywhere" other than the "corporation's place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citations omitted).

"When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Without such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S.Ct. at 1781. "Only contacts occurring prior to the event

causing the litigation . . . may be considered by the Court." *Ariz. Sch. Risk Retention Trust, Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) (citing *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

In analyzing specific jurisdiction, courts use the three-prong minimum contacts test as a guide "to determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction[.]" *Freestream*, 905 F.3d at 603. The test requires that:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* (citation omitted); *see also Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211 (citation omitted). "If the plaintiff succeeds in satisfying [them], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). Absent a "compelling case" that exercising jurisdiction would be unreasonable, it is presumed reasonable. *Burger King*, 471 U.S. at 477. If a plaintiff fails to meet the first prong, the Court need not address the others. *Ariz. Sch. Risk Retention Trust*, 169 F. Supp. 3d at 936.

## III. DISCUSSION

### A. <u>Plaintiffs Fail to Establish a Prima Facie Case of General or Specific Personal Jurisdiction Over Any of the Moving Defendants.</u>

Plaintiffs' complaint alleges that the Court has personal jurisdiction over each Defendant. (Compl. ¶ 1 ("This Court has jurisdiction and venue over this action and over

Defendants.") CMI, LEA, Textron, and KATS disagree, arguing dismissal is appropriate because the Court has neither general nor specific personal jurisdiction over them. Plaintiffs initially claimed in their responses to the motions to dismiss by LEA, Textron, and KATS that general, but not specific, personal jurisdiction exists over them. (Doc. 34 at 5-6; Doc. 44 at 5-7; Doc. 55 at 6-7.) However, Plaintiffs' counsel conceded at oral argument that the Court lacks general jurisdiction over Defendants. (Doc. 80.) The Court agrees with this concession, especially considering that no Defendant is incorporated in or operates its principal place of business in Arizona. *See Daimler*, 571 U.S. at 127. Moreover, none is affiliated with Arizona in such a "continuous and systematic" way as to "render [it] essentially at home [here]." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Notwithstanding that exercising general jurisdiction over these Defendants would be inappropriate, the Court also finds that its exercise of specific personal jurisdiction over Defendants would be similarly inappropriate. *See Bristol-Myers Squibb*, 137 S.Ct. at 1781.

### i. Purposeful Availment

Under the first prong of the minimum contacts test, Plaintiffs must show each Defendant "either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). This prong presents two distinct standards, with each to be applied under different circumstances. *Schwarzenegger*, 374 F.3d at 802; *Ziegler*, 64 F.3d at 473 ("we apply different purposeful availment tests to contract and tort cases"). Because Plaintiffs bring claims of negligence, breach of contract, and products liability, the Court will apply the purposeful availment test. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (using purposeful availment test to evaluate personal jurisdiction for negligence and breach of contract claims); *see generally J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (applying purposeful availment to analyze personal jurisdiction for products liability claim).

The purposeful availment test advances the due process notion that "a defendant

will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted). "[It] is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (citing *Burger King*, 471 U.S. at 476)). But simply placing "a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland*, 485 F.3d at 459. Instead, only if "the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, [would it be] []reasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen Corp. Woodson*, 444 U.S. 286, 297 (1980). But a defendant's mere, uncalculated prediction that its goods will reach the forum is insufficient; rather, personal jurisdiction will exist "only where the defendant can be said to have targeted the forum." *Nicastro*, 564 U.S. at 882.

Here, and as discussed below, Plaintiffs have not shown any Defendant is meaningfully connected to Arizona in such a way that exercising personal jurisdiction would be appropriate. As a result, this Court is "without power to adjudge the rights and liabilities of [Defendants], and its exercise of jurisdiction would violate due process." *Cf. id.*, 564 U.S. at 887.

### 1.  Leading Edge Aviation Inc.

Plaintiffs argue the Court has personal jurisdiction over LEA for their negligence claim because "[it] purposefully offers aviation maintenance services to all of the western

United States and has done so for more than two decades." (Doc. 34 at 6.) The only allegations in the complaint concerning these services is that "[LEA] was engaged in the business of servicing and maintaining aircraft, including the subject aircraft" and "performed maintenance and repair work on [it]" somewhere at some unknown time. (Compl. ¶¶ 56, 83.) Without any factual support showing LEA specifically offered these services in Arizona, they argue its website demonstrates that this Court's exercise of personal jurisdiction over LEA is proper.[5] (Doc. 34 at 5-6.) This is not enough.

Blankly pointing to a company's website ineptly shows personal jurisdiction exists. *See Holland*, 485 F.3d at 459 ("a mere web presence is insufficient to establish personal jurisdiction"); *see also*, *e.g.*, *Cybersell*, 130 F.3d at 419 ("While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that [defendant] deliberately directed its [conduct] toward Arizona residents."). Moreover, nothing on the website evidences whether LEA actually offered these services in Arizona, let alone if they were performed on Plaintiffs' aircraft. But even if the website *said* it provided its services here, that would likewise be insufficient without more. Afterall, such a finding would be akin to one permitting a defendant to decide for itself whether and where personal jurisdiction exists. Instead, there must be uncontroverted allegations or evidence demonstrating LEA's purposeful availment in Arizona, which is missing here.

In absence of any such allegations or supporting evidence showing LEA provided its services in Arizona, let alone on Plaintiffs' airplane while here, the Court cannot exercise personal jurisdiction over it consistent with due process. In fact, LEA has shown through evidence precisely why the Court lacks personal jurisdiction over it. In particular, its vice president declared under penalty of perjury that its only contacts with Arizona are that it "owns and operates four helicopters which are under lease to the United States Department of [the] Interior and U.S. Forest Service for fire fighting purposes" and installed avionics for another company in Arizona. (Doc. 15-1 at 1.) Beyond these contacts,

---

[5] Plaintiffs direct the Court to peruse LEA's website by simply listing website in a footnote. (*See id.* at 6 n.2.)

none of which relate to the claims brought in this case, LEA's vice president affirms that the company has done no other work in Arizona, is unregistered to do business here, does not target prospective customers in Arizona, and performed maintenance on Plaintiffs' aircraft in Oregon, not Arizona. (Doc. 15-1 at 1.) Based on this uncontroverted evidence, the Court finds that LEA lacks a meaningful connection to Arizona concerning Plaintiffs' negligence claim and must be dismissed for lack of personal jurisdiction.

## 2.   Textron Aviation Inc.

The basis for Plaintiffs' strict products liability, negligence, and breach of warranty claims against Textron arises out of the company's design, manufacturing, and distribution of their aircraft. (*See* Compl. ¶¶ 35-37.) In quoting miscellaneous statements on Textron's website, Plaintiffs argue that the Court has personal jurisdiction over it, as the parent company of Cessna, because it "sells Cessna aircraft into the stream of commerce knowing that it may go anywhere in the world, including Arizona." (Doc. 44 at 6.) They further argue that it "directly serves Arizona's aviation market through its aircraft sales and distribution and through its robust aircraft service network." (*Id.*) The record is hollow with anything supporting Plaintiffs' assertions, but they nonetheless argue the Court has personal jurisdiction over Textron. (*Id.* at 5-7.) Because nothing in the record meaningfully connects Textron's suit related activities to Arizona, or even Plaintiffs' aircraft, the Court finds exercising personal jurisdiction over it inappropriate. *See Walden*, 571 U.S. at 284.

Besides Plaintiffs' unpersuasively attempt at establishing personal jurisdiction, Textron has adequately shown this Court lacks personal jurisdiction over the company. That is, its corporate governance manager and assistant secretary affirms that Plaintiffs' aircraft was designed by Columbia Aircraft Manufacturing Corporation in 2000 and then manufactured and sold by Columbia in 2006. (Doc. 19-1 at 3-5.) She further affirms that Textron was uninvolved in manufacturing, designing, or selling Plaintiffs' aircraft or any general aviation aircraft in Arizona. (*Id.* at 4.) While Textron has a service center in Arizona, she also affirms that it did not service Plaintiffs' aircraft, notwithstanding that the basis for Textron's liability relates to its design, manufacture, and sale of Plaintiffs'

aircraft, not its maintenance. (*See id.* at 5.) Without any supporting evidence, Plaintiffs' argument that specific jurisdiction over Textron exists because it placed Cessna aircrafts into the stream of commerce and conducts business world-wide does not show exercising personal jurisdiction is appropriate. Even assuming these things are true, Textron's mere placing of Plaintiffs' aircraft into the marketplace is not enough by itself to show this Court has personal jurisdiction over it, *see Nicastro*, 564 U.S. at 882, and its universally accessibly website declaring a world-wide enterprise focus does not do it either, *see Holland*, 485 F.3d at 459. Because Textron's virtually nonexistent ties to Arizona do not show it purposefully availed itself here, the Court cannot exercise personal jurisdiction over it.

### 3.  Kelly Aerospace Thermal Systems LLC

The complaint alleges KATS designed, manufactured, and distributed the deicer installed on Plaintiffs' aircraft. (Compl. ¶¶ 26-29.) Without submitting any evidence in support, Plaintiffs argue that KATS is subject to personal jurisdiction "anywhere in the world, including Arizona," because it sells deicers, including the one installed on Plaintiffs' aircraft, and publishes service bulletins online. (Doc. 55 at 6.) KATS disagrees, arguing that Plaintiffs have not pointed to any of its conduct implicating Arizona and that their "stream of commerce" theory is legally unsupported. (Doc. 51 at 5-6.) The Court agrees with KATS.

Despite Plaintiffs' barebones claim that personal jurisdiction exists, KATS' uncontroverted facts show it did not purposefully avail itself in Arizona for purposes of Plaintiffs' claims. Kent Kelly, KATS' chief executive officer, attests that the company has not marketed or directed its products at Arizona, is unregistered with the Arizona Corporation Commission, has no offices or employees in Arizona, does not own or lease any Arizona property, has no bank accounts in Arizona, does not send employees here on a regular basis, and has no Arizona distributors.[6] (Doc. 51-1 at 3-4.) These things satisfactorily defeat an empty allegation that jurisdiction exists. (*See* Compl. ¶ 1.)

---

[6] Mr. Kelly also attests that the deicing system on Plaintiffs' aircraft was installed in Oregon by RDD Enterprises. (Doc. 51-1 at 4.)

1      Furthermore, just selling a deicer that happened to be installed in Plaintiffs' aircraft

2   in Oregon, without any intentional aiming at Arizona, does not subject KATS to personal

3   jurisdiction here. *See Holland*, 485 F.3d at 459. Such a finding would moot the personal

4   jurisdiction inquiry entirely. Nor does generally publishing service bulletins over the

5   internet concerning the deicer show KATS is sufficiently connected to Arizona. Rather,

6   such an approach improperly focuses on where the service bulletin is read, not the forum

7   where it was directed. *See Burger King*, 471 U.S. at 475. Accordingly, KATS will also be

8   dismissed for lack of personal jurisdiction.

9                          **4.   Continental Motors Inc.**

10      Plaintiffs argue that exercising personal jurisdiction over CMI is appropriate

11   because it: (1) issued Critical Service Bulletin in CSB15-2C which later became an

12   Airworthiness Directive issued by the FAA; (2) lists four "official" repair and installation

13   shops in Arizona on its website; and (3) targeted its advertising to Arizona residents.[7] (Doc.

14   29 at 3-4, 6-12.) Plaintiffs do not attach any evidence or point to no allegations supporting

15   the latter two assertions, meanwhile, CMI attached a declaration by its director of

16   certification and airworthiness, Michael Ward. (*See* Doc. 10-1 at 3-4.) Mr. Ward's

17   declaration states that CMI did not create or direct its marketing strategy for the subject

18   engine to be sold in Arizona or to its residents, is not authorized to do business here, has

19   no offices in Arizona, and does not own or lease any Arizona property. (*Id.*)

20      Plaintiffs' first assertion that personal jurisdiction exists over CMI in Arizona

21   because it issued a service bulletin that created a duty to perform necessary maintenance is

22   unpersuasive. If this argument were valid, then CMI's service bulletin would subject it to

23   suit in every state regardless of any other ties. There must be something more substantial

24   and direct tethering CMI to Arizona beyond this to show it is subject to personal

25   jurisdiction here. *See Burger King*, 471 U.S. at 475-76. Plaintiffs' second assertion, that

26

27   [7] Plaintiffs also unpersuasively argue, as they did in claiming the Court has personal
    jurisdiction over KATS, that personal jurisdiction exists because "CMI purposefully sells

28   its engines into the stream of commerce knowing that [they] may go anywhere in the world,
    including Arizona." (Doc. 29 at 6.) As explained above regarding the same argument made
    as to KATS, this also insufficiently shows the Court has personal jurisdiction over CMI.

CMI's website describing its Arizona shops creates personal jurisdiction, is also unappealing. *See Holland*, 485 U.S. at 460. Just because CMI operates a universally accessible website where anyone can access information about its service centers does not show it purposefully availed itself here. *See Quantum Leasing, LLC v. Robinson Helicopter Co., Inc.*, No. 2:15-CV-1005-HRH, 2016 WL 192145, at *5 (D. Ariz. Jan. 15, 2016) (finding non-resident company's website and operation and maintenance manual provided with helicopter purchase insufficient to establish specific jurisdiction). Plaintiffs' final assertion that CMI directed its advertising at this forum is factually unsupported, and CMI has explicitly presented evidence that it does not target Arizona.

Accordingly, Plaintiffs' bare assertions that this Court has personal jurisdiction over CMI fail when considering contradictory evidence in the record that persuasively shows that exercising personal jurisdiction over CMI would be improper.

## IV. JURISDICTIONAL DISCOVERY

Plaintiffs alternatively request limited jurisdictional discovery as to each Defendant if the Court finds personal jurisdiction lacking. (Doc. 29 at 12; Doc. 44 at 7; Doc. 34 at 6; Doc. 55 at 7-8.) Defendants oppose the requests. (Doc. 38 at 8-9; Doc. 42 at 4-5; Doc. 54 at 10-11; Doc. 57 at 5-6.) They will be denied.

A trial court has broad discretion as to whether to permit limited jurisdictional discovery. *Data Disk*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). While "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citations and internal quotations omitted), "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendant[], the Court need not permit even limited discovery," *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). A court also need not permit "[a plaintiff's] request for discovery . . . based on little more than a hunch that it

1   might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th

2   Cir. 2008).

3       Here, the Court finds limited jurisdictional discovery unwarranted because

4   Defendants have already specifically rebutted Plaintiffs' unsupported jurisdictional

5   allegations and arguments. *Pebble Beach*, 453 F.3d at 1160. Despite this, Plaintiffs request

6   permission to conduct discovery as to each Defendant without providing any affidavit or

7   evidence substantiating their requests or describing with any precision how such discovery

8   would be helpful to the Court. Accordingly, Plaintiffs' speculative requests, akin to

9   hunches that personal jurisdiction might exist, do not warrant even limited jurisdictional

10  discovery. *Boschetto*, 539 F.3d at 1020.

11  **V.    CONCLUSION**

12      Plaintiffs have not shown that any of the moving Defendants are meaningfully

13  connected to Arizona in such a way that renders them subject to this Court's exercise of

14  personal jurisdiction. Absent Plaintiffs' prima facie showing that each Defendant

15  possessed the requisite minimum contacts with Arizona or that each's alleged unlawful

16  conduct arose out of or was related to those contacts, this Court cannot exercise personal

17  jurisdiction over any of them.

18      Accordingly,

19

20      **IT IS ORDERED GRANTING** Defendants' Motions to Dismiss, (Docs. 10, 15,

21  19, 51). Continental Motors Inc., Leading Edge Aviation Inc., Kelly Aerospace Thermal

22  Systems LLC, Textron Aviation Inc., and Cessna Aircraft Co. are **DISMISSED**.

23

24      Dated this 2nd day of June, 2020.

25

26

27  Honorable Susan M. Brnovich
    United States District Judge

28

- 13 -